Sally B. McMinimee (5316)
Jared N. Parrish (11743)
Jennifer R. Korb (9147)
**PRINCE, YEATES & GELDZAHLER**
A Professional Corporation
City Centre I, Suite 900
175 East 400 South
Salt Lake City, UT 84111
Telephone: (801) 524-1000
Facsimile: (801) 524-1099
sbm@princeyeates.com
jnp@princeyeates.com
jrk@princeyeates.com

Attorneys for Receiver Robert G. Wing

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **ROBERT G. WING**, as Receiver for **VESCOR CAPITAL CORP**, et al, <br><br> Plaintiff, <br><br> vs. <br><br> **GRUBB & ELLIS REALTY INVESTORS, LLC**, a Virginia limited liability company, and Utah foreign limited liability company, <br><br> Defendant. | **COMPLAINT** <br> **(Ancillary Suit)** <br><br> Civil No. _____ <br><br> Judge Dee Benson |

Robert G. Wing (the "Receiver"), as Receiver for VesCor Capital Corp and all

affiliated limited partnerships, corporations or other business entities including

R.O.C.S.E.V. Capital, LLC ("R.O.C.S.E.V.") (collectively referred to as "VesCor") complains against Defendant as follows:

## STATEMENT OF THE CASE

1.     The Defendant received a transfer of real property, located in Henderson, Nevada, from VesCor.  The transfer was a fraudulent transfer.  The Receiver seeks the return of the property for the benefit of the defrauded investors.

2.     The Defendant received transfers of funds from escrow accounts funded by VesCor.  The payments Defendant received from the escrow accounts constitute fraudulent transfers.  The Receiver seeks the return of the payments for the benefit of defrauded investors.

3.     The Defendant breached an Amended and Restated Escrow Holdback Agreement between the Defendant and VesCor by failing to use commercially reasonable efforts to expeditiously lease real property purchased from VesCor.  The Receiver seeks damages, for the benefit of defrauded investors, as a result of the economic injury suffered.

## PARTIES, JURISDICTION AND VENUE

4.     Robert G. Wing is the Receiver for VesCor Capital.

5.     Grubb & Ellis Realty Investors, LLC ("Grubb & Ellis") is a Virginia limited liability company, also registered as a foreign limited liability company in Utah. Grubb & Ellis is the successor in interest to Triple Net Properties, LLC.

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 754.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 754.

## FACTUAL PREDICATE

8.      VesCor was operated by its principal Val Edmund Southwick ("Southwick") as a Ponzi scheme at all times relevant to this action.

9.      Beginning in or about 1990, Southwick organized and operated companies referred to collectively as "VesCor."   R.O.C.S.E.V. is a VesCor entity.   VesCor raised capital primarily through the sale of securities to investors.

10.     VesCor told investors their money would be used to fund the development of commercial and industrial real estate.

11.     In fact, VesCor used most of the money it obtained from new investors to pay the debts owed to older investors, to pay commissions on the sale of investments to sales agents, to fund company operations, and to underwrite Southwick's lifestyle.

12.     In 1992, VesCor was sanctioned by the Utah Department of Commerce, Division of Securities ("Division") in a Stipulation and Consent Order wherein the Division alleged VesCor had sold unregistered securities to investors in the State of Utah.

13.     In 2002, VesCor was again sanctioned by the Division in a Stipulation and Consent Order, which said VesCor sold unregistered securities to investors in the State of Utah.

14.     In 2004, VesCor agreed with the Division to discontinue offering securities for sale to Utah residents, and to cease making offers for the sale of securities from within the State of Utah to investors who resided outside the State.   VesCor further promised to pay its current investors their principal and accrued interest at the maturity date of their investments or at an earlier call date.   VesCor breached these promises and continued selling securities.

15.     By 2006, Vescor had grown to a complex web of over 150 corporations and limited liability companies, registered in Utah and Nevada, and owned interests in commercial and industrial real estate in Nevada, Utah, Montana and California.

16.     On or about May 31, 2006 the VesCor Ponzi scheme collapsed when VesCor stopped paying monthly interest payments and principal redemptions to most investors.

17.     On or about April 3, 2007, Southwick, as Manager of the "Seller," R.O.C.S.E.V., signed a Purchase and Sale Agreement and Escrow Holdback Agreement with Triple Net Properties, LLC ("Triple Net").   VesCor agreed to convey title to two (2) office buildings in Henderson, Nevada (the properties were commonly referred to as the SOP 2 and SOP 3) in exchange for thirty-two million dollars ($32,000,000.00).

18.     On or about May 31, 2007, Southwick and Triple Net executed an Amended and Restated Escrow Holdback Agreement ("Amended Holdback Agreement").

19.     Pursuant to the terms of the Amended Holdback Agreement, the Seller, VesCor, contributed all of the monies to fund certain concessions in the form of cash holdbacks, specifically the Apex Industrial Holdback and the HQ Holdback (collectively the "Escrow Holdback").

20.     The monies funding the Escrow Holdback would otherwise have gone to VesCor as proceeds of the sale.

21.     Paragraph 3 of the Amended Escrow Agreement provides:  "Buyer shall use commercially reasonable efforts to lease the Apex Space as expeditiously as possible following the Closing."

22.     The closing took place on or about June 7, 2007.  VesCor conveyed title to Triple Net, funded the Escrow Holdback and received the remaining proceeds.

23.     Paragraph 3(a) of the Amended Escrow Agreement provides that Grubb & Ellis will be paid $8,427.78 per month following the closing date, until Grubb & Ellis leases the "Apex Space."

24.     Upon information and belief, Grubb & Ellis received payments of $8,427.78 per month, from approximately July 2007 through June 2008, for a total of at least $101,133.36, pursuant to Paragraph 3(a) of the Amended Escrow Agreement.

25.     Paragraph 4(b) of the Amended Escrow Agreement provides that Grubb & Ellis will be paid "an amount equal to the Monthly Contract Rent (as such term is defined

in the HQ Bldg 5 Lease) minus the Base Rent (as defined in the HQ Bldg 5 Lease) pursuant to the terms of the HQ Bldg 5 Lease . . ."

26.     Upon information and belief, Grubb & Ellis received payments from approximately July 2007 through May 2008, pursuant to Paragraph 4(b) of the Amended Escrow Agreement.

27.     The payments to Grubb & Ellis were stayed pursuant to the Order Appointing Receiver when the Receiver notified the escrow agent (Stewart Title) of its claim to the funds.

28.     On February 6, 2008, the State of Utah, through its Office of the Attorney General, filed, in Utah State Court, a Criminal Information against Val Southwick, alleging nine (9) counts of state securities fraud in violation of Utah state law, for his alleged involvement in a commercial real estate investment scheme, bilking over eight hundred investors out of an estimated $140 million.

29.     On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and five VesCor entities.  The SEC alleged violations of the anti-fraud provisions of the securities laws.

30.     On March 31, 2008, Southwick pleaded guilty to nine (9) counts of securities fraud, each a felony in the second degree, in the Third Judicial District Court of Utah, and was later sentenced by Judge Robin Reese to serve nine (9) consecutive 1-15 year prison terms, the maximum allowed by State law.

31.     On May 5, 2008, this Court appointed Robert G. Wing as Receiver for the VesCor companies.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Transfers)

32.     The Defendant purchased and received title to two (2) buildings, SOP 2 and SOP 3 in Henderson, Nevada, which were owned by VesCor.

33.     The conveyance of the buildings to the Defendant was done as part of a Ponzi scheme.

34.     Because the transfers were made as part of a Ponzi scheme, as a matter of law, these transfers were made by VesCor with the intent to hinder, delay, or defraud creditors and/or investors of VesCor.

35.     Furthermore, the transfers were made at a time when VesCor was insolvent, VesCor did not receive reasonably equivalent value for the transfers, and the Defendant did not take the transfers in good faith.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Transfers)

36.     The Defendant received payments from escrow accounts funded by VesCor.

37.     The money paid to the Defendant was paid as part of a Ponzi scheme.

38.     Because the transfers were made as part of a Ponzi scheme, as a matter of law, these transfers were made by VesCor with the intent to hinder, delay or defraud creditors and/or investors of VesCor.

39.     Furthermore, the transfers were made at a time when VesCor was insolvent, VesCor did not receive reasonably equivalent value for the transfers, and the Defendant did not take the transfers in good faith.

## THIRD CLAIM FOR RELIEF
### (Accounting)

40.     At all relevant times, VesCor had no funds or other assets, other than proceeds of the VesCor Ponzi scheme.

41.     The Receiver is entitled to an accounting from Defendant, as to all funds or other assets it received from the VesCor funded HQ Holdback, pursuant to Paragraph 4 of the Amended Escrow Agreement.

## FOURTH CLAIM FOR RELIEF
### (Breach of Contract)

42.     Paragraph 3 of the Amended Escrow Agreement between VesCor and Grubb & Ellis provides:  "[Grubb & Ellis] shall use commercially reasonable efforts to lease the Apex Space as expeditiously as possible following the Closing."

43.     Grubb & Ellis had no incentive to expeditiously lease the property because of the guaranteed payments it was to receive pursuant to the Amended Escrow Agreement.

44.    Grubb & Ellis breached the Amended Escrow Agreement by failing to use commercially reasonable efforts to lease the "Apex Space" as expeditiously as possible following closing.

45.    VesCor suffered economic injury as a result of Grubb & Ellis' breach.

**WHEREFORE,** Plaintiff prays as follows:

A.    That the Plaintiff be awarded damages against the Defendant in an amount to be determined at trial, plus interest, costs and attorneys fees; and

B.    For an accounting by Defendant and such other relief as the Court may allow.

**DATED** this 6th day of July, 2009.

**PRINCE YEATES & GELDZAHLER**


/s/ Sally B. McMinimee
Sally B. McMinimee
Attorneys for Receiver Robert G. Wing

G:\VESCOR - MASTER FILE\Grubb & Ellis\Pleadings\Grubb & Ellis Complaint.doc